**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| YVETTE WESSON, | ) | CASE NO:    5:09-cv-3014 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | NANCY A. VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | **AND ORDER** |

Plaintiff, Yvette Wesson, challenges the final decision of Defendant, Michael J.

Astrue, Commissioner of Social Security (the "Commissioner"), denying Plaintiff's

applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (The "Act").  This Court has jurisdiction pursuant

to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate

Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. §

636(c)(2).

For the reasons set forth below, the Court AFFIRMS the final decision of the

Commissioner.

1

# I.  PROCEDURAL HISTORY

On February 23, 2006, Plaintiff filed an application for a POD and DIB benefits. (Amend. Tr. 97.)  On March 10, 2006, Plaintiff filed an application for SSI benefits. (Amend. Tr. 101.)  The onset date of disability alleged in both applications was November 30, 2005.  (Amend. Tr. 97, 101.)  Plaintiff's applications were denied initially, (Amend. Tr. 53, 57), and upon reconsideration (Amend. Tr. 72, 76).

On January 15, 2009, a hearing was held before an administrative law judge ("ALJ").  (Amend. Tr. 20.)  On April 29, 2009, the ALJ found Plaintiff not disabled. (Amend. Tr. 7, 14, 18.)  Although a vocational expert ("VE") appeared at the hearing, the ALJ relied on the medical-vocational guidelines, otherwise known as the "grid," rather than the VE to determine the number of jobs in the national economy that Plaintiff could perform.  (Amend. Tr. 20; *see* Amend. Tr. 12-18.)  On October 29, 2009, the Appeals Council denied Plaintiff's request for review. (Amend. Tr. 1.)  On December 30, 2010, Plaintiff timely filed a complaint in this Court.  (Doc. No. 1.)

Plaintiff asserts six assignments of error:  (1) the ALJ failed to consider several medical documents that were inexplicably missing from the administrative record at the time of the hearing; (2) the ALJ failed to deem Plaintiff's carpal tunnel syndrome and depression "severe impairments"; (3) the ALJ failed to include Plaintiff's carpal tunnel syndrome and depression in his residual functional capacity ("RFC") assessment; (4) the ALJ failed to give "good reasons" for discrediting a treating physician's medical opinions; (5) the ALJ lacked sufficient evidence to discredit Plaintiff's subjective

2

statements of disability;[1] and (6) the ALJ failed to obtain testimony from the VE despite Plaintiff's nonexertional limitations.  (Pl.'s Br. 8-9, 11, 13-14.)

Plaintiff's first assignment of error requires explanation.  The Commissioner filed the Administrative Record on March 30, 2010.  (Doc. No. 12.)  Shortly after this time, Plaintiff discovered that the Administrative Record was missing several medical records. (Pl.'s Br. 2; Pl.'s Reply Br. 1.)  These records were examination reports from treating physician Dr. Atul Goswami dated April 25, 2006, and May 25, 2006.  (Amend. Tr. 342A-G.)  Plaintiff and the Commissioner jointly filed an Agreed Motion for Extension of Time to File Plaintiff's Brief on the Merits to allow the Commissioner time to verify whether the medical records were, in fact, missing from the Administrative Record initially submitted to the Social Security Administration.  (Doc. No. 13.)  On May 19, 2010, the Commissioner subsequently  filed an Amended Transcript of Proceedings that included the seven missing examination reports.  (Doc. No. 14; Amend. Tr. 342A-G.) The Commissioner certified that the additional documents were "true and accurate copies of [the] missing pages," which were "inadvertently omitted from the administrative record."  (Doc. No. 14.)

Plaintiff claims that the additional records were not reviewed by the ALJ because (1) the ALJ did not discuss those particular documents in his written Decision, and (2)

---

[1] Plaintiff argues in the heading of her fifth assignment of error that the ALJ failed to give "good reasons" for discrediting Plaintiff's subjective statements describing her symptoms.  (Pl.'s Br. 13.)  The substance of Plaintiff's argument, however, regards whether the ALJ's credibility assessment of Plaintiff's statements is supported by substantial evidence in light of the fact that he did not have several medical records before him when he made those assessments.  (Pl.'s Br. 13.)  The Court will address the substance of the argument.

3

the documents were not identified with exhibit stamps as was the other evidence.  (Pl.'s Br. 9.)  Plaintiff insists, however, that the records were initially submitted to the Social Security Administration before the hearing in front of the ALJ.  Plaintiff's counsel reviewed the administrative record from electronic disc before the hearing in front of the ALJ and, at that time, found no indication that the several records were missing.  (Pl.'s Reply Br. 2.)  At that time, Plaintiff's counsel reviewed only the exhibit names listed on the administrative record's table of contents, not each record individually.  (Pl.'s Reply Br. 2.)  During the hearing, the ALJ asked Plaintiff's counsel whether the evidence submitted electronically was complete, whether counsel had reviewed all of the evidence, and whether counsel had any objections.  (Amend. Tr. 23-25.)  Plaintiff's counsel indicated that the evidence submitted electronically was complete, and that he had no objections.  (Amend. Tr. 23, 25.)  The ALJ then admitted other records into evidence, which Plaintiff provided at the hearing in hardcopy.  (Amend. Tr. 25.)

Because of the lack of clarity on the issue of the missing medical records, the Court ordered Plaintiff to submit a supplemental brief clarifying the legal theory upon which she sought relief, and ordered the Commissioner to submit a response that directly addressed the missing records.  (Doc. No. 19.)  Plaintiff clarified that, as to the missing records, remand should be granted pursuant to sentence six of 42 U.S.C. § 405(g).  (Pl.'s Supp. Br. 1.)  The Commissioner responded that "he is unable to determine with certainty whether the additional evidence was before the ALJ when he rendered his decision," and then argued that a sentence six remand is inappropriate.  (Def.'s Resp. Pl.'s Supp. Br. 1.)

4

## II.  EVIDENCE

### A.      Personal and Vocational Evidence

Plaintiff was 50 years old on the alleged disability onset date, making her an individual closely approaching advanced age.  (Amend. Tr. 97; *see* 20 C.F.R. §§ 404.1563, 416.963.)  She has a high school education and is able to communicate in English.  (Amend. Tr. 17-18.)  Her past relevant work includes home health aide. (Amend. Tr. 17, 27-28.)

### B.       Medical Evidence

#### 1.       Plaintiff's Physical Condition

In February 2002, Plaintiff was in a car accident and subsequently reported back pain.  (Amend. Tr. 433-34.)  In October 2002, an EMG revealed Plaintiff had bilateral carpal tunnel syndrome of marked severity.  (Amend. Tr. 537.)

On August 11, 2004, Plaintiff saw an orthopedist, Dr. Audley Mackel, for complaints of right trigger thumb.  (Amend. Tr. 317.)  Dr. Mackel reported that Plaintiff had a history of carpal tunnel syndrome.  (Amend. Tr. 317.)  Dr. Mackel diagnosed right trigger thumb and right carpal tunnel syndrome.  (Amend. Tr. 317.)  He recommended EMG and MCV studies to evaluate the severity of Plaintiff's carpal tunnel syndrome. (Amend. Tr. 317.)  The record does not indicate that Plaintiff underwent the recommended studies or received treatment for carpal tunnel syndrome from Dr. Mackel.

On September 24, 2004, Plaintiff saw her treating physician, Dr. Atul Goswami, with an unspecified complaint.  (Amend. Tr. 337.)  Dr. Goswami noted that Plaintiff felt well, but diagnosed Plaintiff with migraine headaches and depression.  (Amend. Tr.

337.)

On January 13, 2005, Plaintiff saw Dr. Goswami for a regular check up and complained of dry eyes, discharge from the eyes, and knots on her legs.  (Amend. Tr. 476.)  Dr. Goswami diagnosed Plaintiff with depression and hypertension.  (Amend. Tr. 476.)

On November 30, 2005, Plaintiff saw Dr. Mackel again as a follow-up to a status post knee arthoplasty.  (Amend. Tr. 316.)  Plaintiff had no major complaints other than some pain around the knee caused by weight-bearing and activity.  (Amend. Tr. 316.)

In April 2006, Plaintiff saw Dr. Goswami twice with complaints of kidney stones and shingles.  (Amend. Tr. 473, 475.)  Dr. Goswami diagnosed renal stones and herpes zoster.  (Amend. Tr. 473, 475.)  On April 24, 2006, Dr. Goswami found Plaintiff's abilities to push/pull, bend, reach, and make repetitive foot movements "extremely limited." (Amend. Tr. 342B, E.)  He found Plaintiff's ability to handle "markedly limited."  (Amend. Tr. 342B, E.)  Dr. Goswami opined that Plaintiff's functional limitations would last between thirty days and nine months.  (Amend. Tr. 342B, E.)

On May 25, 2006, Dr. Goswami completed a medical source statement in connection with Plaintiff's applications for POD, DIB, and SSI.  (Amend. Tr. 331-33.)  Dr. Goswami indicated that Plaintiff had osteoarthritis of the hip, knee, and spine; hypertension; and renal stones.  (Amend. Tr. 332.)  He indicated that Plaintiff could sit for two to four hours, and stand for two hours in a normal workday.  (Amend. Tr. 333.)  Dr. Goswami further indicated that Plaintiff's abilities to sit, stand, bend, lift, pull, push, and stoop were "severely affected"; and that Plaintiff's ability to walk was "moderately affected."  (Amend. Tr. 333.)  Dr. Goswami listed carpal tunnel syndrome as a chronic

6

medical condition in both of Plaintiff's hands.  (Amend. Tr. 342C, F.)

On August 10, 2006, a state agency reviewing physician, Dr. Esberdado Villanueva, provided a physical RFC assessment based on Plaintiff's osteoarthritis of the hip, knee, and spine, hypertension, renal stones, left flank pain, and alleged impairments of skull tumor, carpal tunnel syndrome, and hand tremor.  (Amend. Tr. 458-65.)  Dr. Villanueva found Plaintiff could perform virtually a full range of medium work, except that she should never climb ladders, ropes, or scaffolds.  (Amend. Tr. 459-60.)

On September 14, 2006, Plaintiff saw Dr. Goswami with a complaint of shingles.  (Amend. Tr. 513.)  Dr. Goswami included Plaintiff's carpal tunnel syndrome in his diagnosis.  (Amend. Tr. 513.)  Dr. Goswami also filled out a physical RFC form and indicated that Plaintiff could, with rests, sit a maximum of four hours, stand two hours, and walk a maximum of four blocks in a workday.  (Amend. Tr. 466.)  He indicated that Plaintiff could never bend, squat, crawl, climb, or reach above shoulder level.  (Amend. Tr. 466.)  He indicated that Plaintiff could lift ten pounds occasionally, carry eleven pounds occasionally, and could not use her hands to grasp, push, pull, or perform fine manipulation.  (Amend. Tr. 466.)  Dr. Goswami further indicated that Plaintiff could not return to full-time employment, and that her condition would last more than twelve months.  (Amend. Tr. 466.)

On December 19, 2006, Plaintiff saw Dr. Goswami because she felt ill after eating at a restaurant.  (Amend. Tr. 513, 514.)  Dr. Goswami again indicated Plaintiff's carpal tunnel syndrome in his diagnoses.  (Amend. Tr. 513, 514.)

On November 16, 2006, the state agency requested Dr. Goswami to provide another evaluation of Plaintiff, and Dr. Goswami indicated that Plaintiff had been

7

diagnosed with carpal tunnel syndrome, hypertension, osteoarthritis of the knees, renal stones, herpes zoster, and depression.  (Amend. Tr. 469-70.)  Dr. Goswami did not provide any functional limitations in this evaluation.  (*See* Amend. Tr. 469-71.)

Plaintiff saw Dr. Goswami twice the following year, on October 30, 2007, and on December 15, 2007, with complaints of pain in the left ankle, fingers, bottom of her feet and toenail, left groin, and inner thigh; abdominal pain; rectal bleeding; and nausea. (Amend. Tr. 515, 516.)  Dr. Goswami did not diagnose carpal tunnel syndrome at these times.  (*See* Amend. Tr. 515, 516.)

### 2.    Plaintiff's Mental Condition

On July 11, 2006, Plaintiff was examined by consultative psychologist E.M. Bard, Ph.D.  (Amend. Tr. 438-43.)  On examination, Dr. Bard found Plaintiff was cooperative and had normal mood and affect.  (Amend. Tr. 440.)  Plaintiff denied any thought distortion, paranoid behavior, hallucinations, or mental confusion.  (Amend. Tr. 440.) Intelligence testing showed a full-scale IQ score of 78, but Dr. Bard reported that the score was an underestimate based on Plaintiff's education and work history.  (Amend. Tr. 441.)

With respect to daily functioning, Dr. Bard noted that Plaintiff could write a check, balance her checkbook with a calculator, select her clothing, manage her own money, and operate a washer/dryer.  (Amend. Tr. 440-41.)  Plaintiff's hobbies included sewing, making wedding cakes, and helping handicapped children.  (Amend. Tr. 441.)  Plaintiff reported being a member of a local church and having contact with family members. (Amend. Tr. 441.)  She also had three close friends in the community.  (Amend. Tr. 441.)

8

Dr. Bard diagnosed Plaintiff with an adjustment disorder with depressed mood, partner relational problems, and undifferentiated somatoform disorder traits.  (Amend. Tr. 443.)  He calculated a global assessment of functioning ("GAF") score of 62.[2] (Amend. Tr. 443.)

With respect to Plaintiff's work-related functioning, Dr. Bard found Plaintiff had, at most, mild limitations.  (Amend. Tr. 442-43.)  Plaintiff reported that she had been successfully employed at several nursing homes throughout the years and had a valid nursing assistant certificate.  (Amend. Tr. 442.)  Dr. Bard noted that, between 1997 and 2005, Plaintiff worked at four different nursing homes, had never been fired from any position, and reported no unusual difficulty dealing with coworkers, patients, or supervisory staff.  (Amend. Tr. 442.)  Dr. Bard found Plaintiff had mild limitations in her ability to understand and follow instructions.  (Amend. Tr. 442.)  He noted Plaintiff was able to read with comprehension and handle her own mail.  (Amend. Tr. 442.)  He also noted that Plaintiff was a high school graduate who completed some post high school training.  (Amend. Tr. 442.)  Dr. Bard found no limitations in Plaintiff's ability to maintain attention to perform simple repetitive tasks.  (Amend. Tr. 442.)  He noted that Plaintiff maintained a valid driver's license and handled her own personal grooming, eating, dressing, and mobility.  (Amend. Tr. 442.)  And Dr. Bard found that Plaintiff had mild limitations in her ability to withstand stress and pressures associated with day-to-day

---

[2]  A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning.  A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

9

work activities.  (Amend. Tr. 442-43.)

On August 5, 2006, state agency reviewing psychologist Roseann Umana reviewed Dr. Bard's evaluation and determined that Plaintiff did not have a severe mental impairment.  (Amend. Tr. 444, 456.)

On October 2, 2006, Plaintiff saw licensed social worker Martha Pitts at Portage Path Behavioral Health Services.  (Amend. Tr. 500.)  Ms. Pitts indicated on a questionnaire for the Rehabilitation Services Commission that Plaintiff was unable to work because of her health problems, which lead to depression.  (Amend. Tr. 499, 500.) A psychiatrist at Portage Path indicated that Plaintiff suffered post traumatic stress disorder and major depressive disorder with recurrent mood.  (Amend. Tr. 502.)  The psychiatrist further reported that Plaintiff was socially isolated because of her physical ailments and depression.  (Amend. Tr. 502.)

### C.    Plaintiff's Hearing Testimony

Plaintiff testified to the following.  She had a total knee replacement on the right side in 2001, needed a left knee replacement and a left hip replacement; and had a lot of pain.  (Amend. Tr. 32.)  She suffered a head tumor, migraine headaches, TMJ, high blood pressure, asthma, arthritis, locking of the fingers, carpal tunnel syndrome, and gout.  (Amend. Tr. 32-33.)  She spent her days in the bedroom, had no company, and left her house briefly only two to three times a week.  (Amend. Tr. 37.)  She could not sit on furniture, sleep at night, eat well, or use her hands and legs as she wanted to use them.  (Amend. Tr. 37.)  She could lift about ten pounds occasionally, stand for about eight minutes, walk about a half a block before needing to rest, and sit for an hour. (Amend. Tr. 37-38.)  She completed the twelfth grade and was certified as a home

10

healthcare aide when she last worked on November 30, 2005.  (Amend. Tr. 27-28.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and

416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  [Plaintiff] met the insured status requirements of the Social Security Act through December 31, 2006.

2.  [Plaintiff] has not engaged in substantial gainful activity since November 30, 2005, the alleged onset date.

3.  [Plaintiff] has the following severe impairments: degenerative joint disease of the left knee and status post total right knee replacement.

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

5.  After careful consideration of the entire record, I find that [Plaintiff] has the [RFC] to perform virtually the full range of medium work    . . . .  Specifically, she can lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently, and stand/walk up to a total of about 6 hours in 8.  She should not climb ladders, ropes or scaffolds.  The evidence does not establish any other limitations.

6.  [Plaintiff] is unable to perform any past relevant work.

7.  [Plaintiff] was born on July 31, 1955 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8.  [Plaintiff] has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of

disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not [Plaintiff] has transferrable job skills.

10.    Considering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that she can perform.

11.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 30, 2005 through the date of this decision.

(Amend. Tr. 12-18.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, and whether it was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations nor weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a

13

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.

### B.    Sentence Six Remand

Plaintiff seeks remand under sentence six of 42 U.S.C. § 405(g) because she believes that, if the ALJ reviews the "missing" medical records, there is a reasonable probability that he will find Plaintiff disabled.  (Pl.'s Supp. Br. 2.)  Sentence six of 42 U.S.C. § 405(g) permits a court to remand a case back to the Commissioner when there is additional evidence that was unreviewed in the prior proceeding, but only when the additional evidence is new and material, and when there is good cause for the failure to incorporate that evidence into the record at the prior proceeding.  42 U.S.C. § 405(g); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).  The party seeking remand bears the burden of showing that remand is appropriate.  *Hollon*, 447 F.3d at 483.  Here, remand under sentence six is inappropriate because the missing records are not new or material.

Evidence is "new" only if it was not in existence or available to the claimant at the time of the administrative proceeding.  *Id.* at 483-84.  Plaintiff's allegation that the missing records were initially submitted to the Social Security Administration implies that they were in existence and available at the time of the hearing.  *See id.* at 484.  Therefore, the missing records are not "new."  *See id.* at 483-84.

Evidence is "material" only if there is a reasonable probability that the Commissioner would have reached a different conclusion if he had been presented with the new evidence.  *Id.*  For the following reasons, it is not reasonably probable that the ALJ would have reached a different conclusion had he looked at the missing records.

14

Dr. Goswami's findings in the missing records are virtually the same as those in the records that the ALJ reviewed.  (*Compare* Amend. Tr. 333 *with* Amend. Tr. 342B, E.)  Both sets of records indicate Dr. Goswami's opinion that Plaintiff's ability to sit was limited to between two and four hours.  (Amend. Tr. 333; 342B, E.)  And both sets of records indicate Dr. Goswami's diagnosis of carpal tunnel syndrome while providing no explanation of the bases for the diagnosis or how it affected Plaintiff.[3]  (Amend Tr.513, 514; Amend Tr. 342C, 342F.)

In two respects, the missing records undermine Plaintiff's position.  First, the missing records indicate that Plaintiff had a *greater* ability to stand than in the reviewed records:  Dr. Goswami indicated in the missing records that Plaintiff could stand for four hours in an eight-hour workday, while he indicated in the reviewed records that she could stand for only two hours.[4]  (*See* Amend. Tr. 333; 342B, E.)  Second, Dr. Goswami indicated in the missing records that Plaintiff's impairments would last for thirty days to nine months (Amend. Tr. 342B, E), but this is an insufficient period of disability for a finding of disability under the Social Security Act.  *See* 20 C.F.R. § 416.905(a) (requiring a claimant to have suffered a period of continuous disability for not less than twelve months).

---

[3] Plaintiff suggests that Dr. Goswami's opinion of Plaintiff's functional limitations described in the missing records is based on his diagnosis of carpal tunnel syndrome.  This is contrary to Dr. Goswami notation, however, which states that his findings were based on observations and evidence of only Plaintiff's knee, spine, and hips.  (Amend. Tr. 342B, 342E.)

[4] In the reviewed records, Dr. Goswami found Plaintiff's functional abilities "severely" and "moderately affected" (Amend. Tr. 333), while, in the missing records, he found Plaintiff's functional abilities "extremely," and "markedly limited" (Amend. Tr. 342B, E).

The ALJ gave little weight to Dr. Goswami's opinions in the reviewed records because Dr. Goswami never explained how he came to his conclusions, Dr. Goswami's findings were not supported by his progress notes, and Dr. Goswami's findings were inconsistent with the rest of the record evidence.  (Amend. Tr. 17.)  Nothing in the missing records undermines the ALJ's analysis because the missing records suffer the same defects as Dr. Goswami's opinions in the reviewed records.  Therefore, it is not reasonably probable that the ALJ would have changed his Decision had he reviewed the missing records.

Because the missing records are not new and material, a sentence six remand is not appropriate.

**C.      The ALJ's Step Two Analysis of Severe Impairments**

Plaintiff argues that the ALJ erroneously failed to conclude that Plaintiff's carpal tunnel syndrome and depression were severe impairments at step two of his analysis. The Court finds that remand is inappropriate because the ALJ did not err in his analysis and, even if he did err, such error would not be grounds for remand.

**1.      Plaintiff's Carpal Tunnel Syndrome**

Plaintiff argues that the ALJ erroneously failed to deem Plaintiff's carpal tunnel syndrome a "severe impairment," and erroneously failed to give legally sufficient reasons for doing so.  (Pl.'s Br. 9, 11.)  The Court disagrees.  The ALJ explained that Plaintiff's carpal tunnel syndrome was not a severe impairment for three reasons.  The EMG that Plaintiff had in 2002 revealed carpal tunnel syndrome, but was well before her alleged onset date of disability.  (Amend. Tr. 13.)  Plaintiff worked at substantial gainful activity levels following the 2002 EMG with no apparent limitations.  (Amend. Tr. 13.)

16

And, there was no evidence indicating that Plaintiff "sought or received any treatment for carpal tunnel syndrome."  (Amend Tr. 13.)

Plaintiff notes that Dr. Goswami diagnosed Plaintiff with carpal tunnel syndrome in September and December of 2006.  (Pl.'s Br. 10.)  Plaintiff further notes Dr. Goswami's opinions that Plaintiff experienced "difficulties with lifting, carrying . . . and using her hands for grasping, pushing/pulling, or fine manipulation" to suggest that Plaintiff's carpal tunnel syndrome caused these limitations.  (Pl.'s Br. 10.)  And Plaintiff notes that "Dr. Goswami has been consistent in his opinions."  (Pl.'s Br. 10.)  Plaintiff thus suggests that Dr. Goswami's functional limitations were based on Plaintiff's carpal tunnel syndrome.

There is no evidence, however, that Plaintiff's carpal tunnel syndrome was the basis of Dr. Goswami's opinions, or that Dr. Goswami treated Plaintiff for her carpal tunnel syndrome.  As the ALJ noted, "Dr. Goswami's opinions are not supported by his progress notes."  (Amend. Tr. 17.)  Dr. Goswami "offers no explanation for his opinion that [Plaintiff] cannot lift more than ten pounds; such a limitation is not supported even by the diagnosis he offered and is not consistent with [Plaintiff's] wide range of daily activities."  (Amend. Tr. 17.)  Indeed, the evaluation from April 25, 2006, indicates that Plaintiff's knee, spine, and hip were the bases of Dr. Goswami's findings, not Plaintiff's carpal tunnel syndrome.  (Amend. Tr. 342B, E.)  And Dr. Goswami's diagnosis of carpal tunnel syndrome, alone, is of little consequence because the mere diagnosis of an impairment says nothing about the severity of it.  *See Higgs*, 880 F.2d at 863.

The ALJ did not err in excluding Plaintiff's carpal tunnel syndrome as a severe impairment, and he gave a sufficient explanation for doing so.  Therefore, this

17

assignment of error lacks merit.

### 2.    Plaintiff's Depression

Plaintiff argues that the ALJ erroneously failed to deem Plaintiff's depression a "severe impairment."  (Pl.'s Br. 9.)  The Court disagrees.

Plaintiff notes that there was evidence that Plaintiff had been diagnosed with depression, and that Plaintiff was being treated by mental health professionals for depression.  The ALJ considered that evidence, however, and discredited it.  The ALJ noted that Plaintiff reported feeling depressed all of the time and that the depression decreased her ability to concentrate.  (Amend. Tr. 13.)  He then considered the findings of two sources:  a psychological review performed by a licensed psychologist at Portage Path Behavior Health Services, and the opinion of consultative psychologist Dr. Bard. (Amend. Tr. 13-14.)  The Portage Path psychologist opined that Plaintiff was unable to work because of her depression, and that she was socially isolated because of her depression.  (Amend. Tr. 13, *citing* Ex. 13F, at 2-3, 5.)  The ALJ gave no weight to the Portage Path findings, however, because Plaintiff was treated at Portage Path only once, and because it was unclear upon what the Portage Path professionals based their findings.  (Amend. Tr. 14.)

Consultative psychologist Dr. Bard, on the other hand, examined Plaintiff and opined that Plaintiff suffered only mild mental limitations.  (Amend. Tr. 13, *citing* Ex. 8F.) Therefore, based on Dr. Bard's assessment and the record as a whole, the ALJ found that Plaintiff's mental limitations constituted a non-severe impairment.  (Amend. Tr. 14.) The Court finds no deficiency in the ALJ's consideration of Plaintiff's depression as a non-severe impairment.  Therefore, this assignment of error lacks merit.

18

### 3.    Harmless Error.

The determination of severity at the second step of a disability analysis is a *de minimis* hurdle in the disability determination process.  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Anthony v. Astrue*, 266 F. App'x 451. 457 (6th Cir. 2008).  The goal of the test is to screen out totally groundless claims.  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).  Once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two would be only harmless error.  *Anthony*, 266 F. App'x at 457 (citing *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).  However, all of a claimant's impairments, severe and not severe, must be considered at every subsequent step of the sequential evaluation process.  *See* C.F.R. § 404.1529(d); C.F.R. §§ 416.920(d).

Here, the ALJ found that Plaintiff suffered the following severe impairments at step two of his analysis:  degenerative joint disease of the left knee and status post total right knee replacement.  (Amend. Tr. 12.)  Upon these findings, Plaintiff cleared step two of the analysis.  *See Anthony*, 266 F. App'x at 457.  The fact that Plaintiff's carpal tunnel syndrome and depression were not deemed severe impairments at step two would be, at most, harmless error.  *See id.* (citing *Maziars*, 837 F.2d at 244).  Therefore, remand is inappropriate.  *See id.*

### D.    The ALJ's Residual Functional Capacity Assessment

Plaintiff argues that the ALJ erred by failing to include in Plaintiff's RFC any limitations based on Plaintiff's carpal tunnel syndrome and depression.  (Pl.'s Br. 11.)  Plaintiff also argues that the ALJ erred by failing to provide a sufficient explanation for

19

omitting from Plaintiff's RFC any limitations based on the carpal tunnel syndrome and depression. (Pl.'s Br. 11.) The Court disagrees.

An RFC assessment considers only those limitations and restrictions that are caused by an individual's physical or mental impairments. 20 C.F.R. § 404.1545(a)(2). The ALJ did not incorporate any RFC limitations stemming from Plaintiff's carpal tunnel syndrome and depression for the same reasons that he did not deem these impairments severe: the weight of the objective record evidence indicated that Plaintiff was not limited by these impairments. As to Plaintiff's carpal tunnel syndrome, there was no evidence for the period at issue before the ALJ that Plaintiff sought or received any treatment for carpal tunnel syndrome, and Dr. Goswami's functional limitations were given little weight in light of the record evidence as a whole. (Amend. Tr. 14-17.) As to Plaintiff's depression, the ALJ considered the evidence from Portage Path but properly found it incredible. (Amend. Tr. 14.) Moreover, Plaintiff's subjective statements were given little weight because they were inconsistent internally and with the record as a whole. (Amend. Tr. 16.) Because there was insufficient evidence of restrictions or limitations caused by Plaintiff's carpal tunnel syndrome and depression, the ALJ was not required to include limitations in his RFC determination. *See* 20 C.F.R. § 404.1545(a)(2). Accordingly, this assignment of error lacks merit.

### E.     Good Reasons and Treating Physician Dr. Goswami's Opinions

Plaintiff argues that the ALJ did not provide good reasons for giving Dr. Goswami's opinions more weight because some of Dr. Goswami's opinions, that is, the opinions set forth in the "missing" records, were not before the ALJ for consideration. (Pl.'s Reply Br. 2.) The Court disagrees.

An ALJ is required to evaluate every medical opinion that he receives.  *See* 20 C.F.R. § 404.1527(d).  Generally, it is incumbent upon the claimant to provide an adequate record upon which the ALJ can make an informed decision as to disability status.  *See* *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  However, the ALJ has a duty to ensure that a reasonable record has been developed.  *See* *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

Here, the ALJ adequately developed a reasonable record.  He asked Plaintiff's counsel at the hearing whether the evidence submitted electronically was complete, whether counsel had reviewed all of the evidence, and whether counsel had any objections.  (Amend. Tr. 23-25.)  Plaintiff's counsel indicated that the evidence submitted electronically was complete, and that he had no objections.  (Amend. Tr. 23, 25.)  The ALJ then admitted into evidence new records, which Plaintiff provided at the hearing in hardcopy.  (Amend. Tr. 25.)  Nothing in the missing records undermines the ALJ's subsequent analysis and Decision because the missing records suffer the same defects as those records the ALJ reviewed.  In the absence of "new," and "material" evidence, for which there was good cause for not being submitted, the record before the ALJ was complete.  The ALJ had no duty to evaluate evidence that was not properly submitted before him.  *See* 20 C.F.R. § 404.1527(d).  Accordingly, this assignment of error lacks merit.

### F.    The ALJ's Credibility Assessment of Plaintiff's Subjective Statements of Symptoms

The ALJ determined that Plaintiff's subjective statements, which described

21

limitations greater than those included in the ALJ's RFC determination, were not credible.  (Amend. Tr. 15.)  Plaintiff argues that the ALJ's determination of Plaintiff's credibility "does not have any support because he did not have all of the information necessary to make a decision on the claim."  (Pl.'s Br. 13.)  The Court disagrees.  The ALJ made his credibility determination based on all of the record evidence that was before him, and that evidence provides substantial evidence supporting his credibility determination.

In determining the credibility of a claimant's subjective statements, the adjudicator must consider the entire case record, including the objective medical evidence, the claimant's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  S.S.R. 96-7p, at 1.  As discussed above, the record was complete when the ALJ made his Decision.  The ALJ found Plaintiff's subjective statements of disability incredible because they were contradicted by Plaintiff's extensive list of daily activities, because they were inconsistent with Plaintiff's other testimony, and because they were inconsistent with the other, more credible record evidence.  (Amend. Tr. 16.)  The missing records do not undermine the ALJ's credibility assessment because it is not reasonably probable that the presence of the missing records would have changed his Decision.

Because the ALJ's credibility assessment of Plaintiff's subjective statements was based on the record as a whole, and was based on a proper evaluation of the evidence, this assignment of error lacks merit.

22

### G.    Reliance on the Grid, Rather Than a VE, at Step Five

Plaintiff argues that the ALJ erred by failing to obtain VE testimony despite evidence that Plaintiff suffered nonexertional limitations based on her carpal tunnel syndrome.  (Pl.'s Br. 14.)  The Court disagrees.

At the fifth step of a disability analysis, the Commissioner has the burden to prove the  existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  The Commissioner's burden can be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid."  *Brown v. Bowen,* 836 F.2d 549 (Table), 1987 WL 30584, at *4 (6th Cir. 1987).  The Commissioner may not, however, rely on the grids alone to meet his step-five burden when the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008).  Generally, when a claimant has nonexertional impairments, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform.  *Id.*  Testimony from a VE is sufficient "other" evidence.  *See id.*  An ALJ's duty to rely on a VE is thus predicated on the existence of a claimant's nonexertional limitations.  *See id.*

Based on the record as a whole, the ALJ found that Plaintiff "can perform virtually the full range of medium work," and that "her limitation against climbing ladders, ropes and scaffolds does not significantly limit the range of medium work or significantly erode the medium occupational base."  (Amend. Tr. 18.)  Therefore, the ALJ concluded that a

23

finding of "not disabled" was directed by the Grid.  (Amend. Tr. 18.)

Plaintiff argues that her carpal tunnel syndrome imposed nonexertional limitations that required VE testimony for a proper determination of a significant number of jobs in the national economy.  (Pl.'s Br. 14.)  The ALJ explained, however, that there was no evidence that Plaintiff's carpal tunnel syndrome limited her ability to work to an extent greater than those included in her RFC.  (Amend. Tr. 13.)  Although Plaintiff points to Dr. Goswami's opinions as evidence of a more limited functional ability, the ALJ properly gave Dr. Goswami's opinions little weight.  (Amend. Tr. 17.)

Because the ALJ found that Plaintiff did not suffer nonexertional limitations based on Plaintiff's carpal tunnel syndrome, but found that Plaintiff was able to perform virtually a full range of medium work, he was not required to rely on a VE.  *See Jordan, 548 F.3d at 424*.  Therefore, this assignment of error lacks merit.

### H.    Substantial Evidence Supports the ALJ's Decision

The ALJ based his Decision on the record as a whole as it was presented to him and after adequately developing it.  Moreover, he made findings of fact and conclusions of law appropriately.  There was more than a scintilla of evidence that a reasonable mind could accept as adequate to support the ALJ's Decision.  Therefore, the ALJ's Decision is supported by substantial evidence.

24

## VI.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the Commissioner.

IT IS SO ORDERED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: October 20, 2010